UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOUISE IDA HARRIS,

    Plaintiff,                                                  Civil Action No. 10-14904

v.                                                                              HON. ROBERT H. CLELAND
                                                          U.S. District Judge
                                                          HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL                                      U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Louise Ida Harris brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment [Doc. #15] be GRANTED and Plaintiff's motion [Doc. #12] DENIED.

## PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") on September 26, 2007, alleging disability as of March 5, 2007 (Tr. 111-114, 115-122). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on December 29, 2009 in Evanston, Illinois before Administrative Law Judge ("ALJ") Cynthia M. Bretthauer (Tr. 24). Plaintiff, appearing by

-1-

teleconference from Flint, Michigan and represented by attorney Mikel Lupisella, testified (Tr. 28-42), as did Vocational Expert ("VE") James Green (Tr. 43-45). On January 28, 2010, ALJ Bretthauer found that Plaintiff was not disabled (Tr. 17). On October 5, 2010, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision on December 9, 2010.

## BACKGROUND FACTS

Plaintiff, born November 5, 1965, was 44 when the ALJ issued her decision (Tr. 17, 111). She completed high school and worked previously a cashier and kitchen helper (Tr. 138, 145). She alleges disability as a result of fibromyalgia, a torn rotator cuff, back pain, and depression (Tr. 137).

### A.     Plaintiff's Testimony

Plaintiff, a resident of Flint, Michigan, testified that she currently lived with her four children (Tr. 28-29). She stated that she held a valid driver's licence and drove approximately three times a week (Tr. 30). She testified that she recently received a settlement from Workers' Compensation (Tr. 31). Plaintiff alleged that body aches and fatigue forced her to quit her job working in a hospital kitchen (Tr. 32). She stated that prior to working at the hospital, she worked as a cashier at a convenience store (Tr. 32). She opined that her need to nap multiple times a day precluded all gainful employment (Tr. 32).

Plaintiff reported that physical therapy and steroid injections gave her only limited relief (Tr. 34). She stated that she had ended therapy due to lack of insurance, but admitted that she had not resumed therapy upon the reinstatement of her insurance (Tr. 35). She denied current psychological treatment but stated that she continued to take antidepressive medication (Tr. 36-37). Plaintiff admitted that she continued to smoke (Tr. 37).

Plaintiff testified that chronic shoulder, back, and leg pain created most of her

limitations (Tr. 37). She alleged that she was unable to walk for more than 15 minutes without requiring a break, noting that she sometimes required the use of a cane (Tr. 38). She stated that she was able to perform most household chores and grocery shop but was unable to vacuum or perform laundry chores (Tr. 39-40). She denied problems with self-care activities (Tr. 40). She alleged that body pain required her to change position during the course of a 45 to 60 minute church service (Tr. 40). Plaintiff stated that she spent her day reading and reclining (Tr. 41-42). In response to questioning by her attorney, she alleged that fibromyalgia also created memory and concentrational problems (Tr. 42-43).

### B.   Medical Evidence

#### 1. Treating Sources

In January, 2006, rheumatologist Barbara McIntosh, M.D. noted a diagnosis of fibromyalgia, stating that Plaintiff was currently taking Cymbalta, Flexeril and Xanax (Tr. 293). Dr. McIntosh found that Plaintiff was "doing well" (Tr. 293). In March, 2006, Plaintiff was discharged from a brief tenure in a "head and spinal cord injury program" following a January, 2006 "mild" cerebrovascular accident at work (Tr. 254). The discharge records note a diagnosis of fibromyalgia, depression, and anxiety (Tr. 254). April, 2006 imaging studies of the thoracic and lumbar spine showing minimal degenerative changes were otherwise negative (Tr. 263). The same month, Dr. McIntosh noted that symptoms of fibromyalgia were aggravated by the workplace accident (Tr. 291). In May, 2006, Plaintiff received muscle relaxers for back pain (Tr. 375).

In July, 2006, Plaintiff sought emergency treatment for chest pains (Tr. 203-264). Imaging studies were unremarkable (Tr. 226, 233, 236, 239, 243). She was discharged in stable condition (Tr. 236). Results of a stress test conducted later the same month were negative for heart disease (Tr. 213-214, 259, 265). Plaintiff reported to Dr. McIntosh that

she was "getting along better" (Tr. 288). Dr. McIntosh discontinued prescriptions for muscle relaxers (Tr. 288). The same month, physical therapy discharge notes state that Plaintiff was capable of returning to work (Tr. 351). Internist Saed Sarouri, M.D. noted that Plaintiff was "feeling much better" and returning to work (Tr. 308).

February, 2007 imaging studies of the spine and heart were unremarkable (Tr. 329-331). The following month, Dr. Sarouri noted shoulder tenderness and a "mild" limitations in the range of back motion (Tr. 295). MRIs of the cervical and lumbar spine were normal (Tr. 381-382, 393). An MRI of the right shoulder showed tendonosis of the supraspinatus tendon (Tr. 394). In May, 2007, orthopedic surgeon A. George Dass, M.D., noting the absence of a torn rotator cuff, reported to Dr. Sarouri that Plaintiff was not a good candidate for shoulder surgery (Tr. 338, 355). Dr. Dass recommended "gentle stretching and strengthening" (Tr. 338). The same month, nerve conduction studies showed "mild signs of denervation bilaterally" but no evidence of radiculopathy (Tr. 356, 386).

In July, 2007, neurologist Eric Zimmerman, D.O. performed a neurological examination of Plaintiff (Tr. 383-385). She reported insomnia, noting that she required naps three to four days each week (Tr. 383). Noting unremarkable imaging studies, Dr. Zimmerman recommended good sleep hygiene, sleep aids, and if necessary, a referral to an insomnia clinic (Tr. 384). The same month, Plaintiff was discharged from physical therapy for non-attendance (Tr. 462). Plaintiff was deemed non-compliant with a home exercise plan (Tr. 463). Dr. Sahouri opined that Plaintiff would be unable to work at any job for the next three to four months (Tr. 488).

In August, 2007, Plaintiff sought emergency treatment for hip pain and was prescribed pain relievers (Tr. 364). The same month, an MRI of the brain was unremarkable (Tr. 379). The following month, imaging studies of the right hip showed only mild degenerative

changes (Tr. 396, 485). Physical medicine specialist Ed Atty, M.D. advised steroid injections, increasing Plaintiff's dosage of Lyrica, and the resumption of home exercises (Tr. 406). The same month, psychological intake assessment notes indicate that Plaintiff sought counseling for depression and anxiety (Tr. 411-412). She attended only two therapy sessions (Tr. 413-414). In October, 2007, Dr. Sahouri noted that Plaintiff complained of continuing back, right hip, and neck pain (Tr. 409). He opined that she would be unable to work for the next six months (Tr. 487). Plaintiff reported good results from October and December, 2007 steroid injections (Tr. 469-476). In March, 2008, Dr. Sahouri found that Plaintiff would "never" be able to resume her former work, and was disabled from all other work for six months (Tr. 486). August, 2008 imaging studies of the right knee showed "no joint effusion" (Tr. 483).

In July, 2009, Mousa Mahamed, M.D. conducted a physical exam, finding a limited range of spinal motion but otherwise unremarkable results (Tr. 495-496). August, October, and December, 2009 examinations were likewise unremarkable (Tr. 490-494).

### 2. Consultive and Non-Treating Sources

A November, 2007 Psychiatric Review Technique performed on behalf of the SSA found that Plaintiff's limitations as a result of depression and anxiety were non-severe (Tr. 416, 419). Plaintiff limitations in daily living, social functioning, and concentration were deemed mild (Tr. 426). Edward Czarnecki, Ph.D. noted "no significant observations" concerning Plaintiff's mental health in the treating records (Tr. 428).

The following month, S. L. Schuchter, M.D. performed a consultive physical exam of Plaintiff on behalf of the SSA (Tr. 444-445). He noted a mildly reduced range of spine and shoulder motion but found that Plaintiff did not require the use of a cane (Tr. 447-448). The physical examination was otherwise unremarkable (Tr. 445).

In January, 2008, a Residual Functional Capacity Assessment (physical) found that Plaintiff could lift 50 pounds occasionally and 25 frequently; sit, stand, or walk for six hour in an eight-hour workday; and push and pull without limitation (Tr. 453). She was limited to occasional climbing, stooping, kneeling, and crawling; and frequent (as opposed to *constant*) balancing and crouching (Tr. 454). The Assessment found the absence of manipulative, visual, communicative, or environmental limitations (Tr. 455-456).

### C. Vocational Expert Testimony

VE James Green classified Plaintiff's former work as a kitchen helper as unskilled at the medium exertional level and work as a cashier as unskilled/light[1] (Tr. 43). The ALJ then posed the following hypothetical question, taking into account Plaintiff's age, education, work history:

> [C]ould sit for 6 to 8 hours out of the day, stand and walk at least 6 hours out of a day, can lift and carry frequently up to 25 pounds, occasionally up to 50 pounds. Further assume someone who could only occasionally stoop, crawl, kneel, recline. Could this type of person perform the claimant's past work?

(Tr. 32). Based on the above limitations, the VE found that the hypothetical individual could perform both of Plaintiff's former jobs (Tr. 44). He found that if the same individual were limited to exertionally light work, she could perform Plaintiff's job as a cashier (Tr. 44). In addition, the VE testified that the individual could hold a job as a fast food worker (2,500 positions in the local economy); cafeteria attendant (800); and greeter (300). The VE testified further that if the same individual were limited to sedentary work, she could perform

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

the work of a account clerk (250); information clerk (150); and order clerk (350) (Tr. 44). He stated that his testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 44). In response to questioning by Plaintiff's attorney, the VE stated that if the same individual were required to take unscheduled naps during the course of the workday or was unable to concentrate more than 20 percent of the time, all gainful work would be precluded (Tr. 45).

### D. The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found that Plaintiff experienced the severe impairments of "possible fibromyalgia; neck and low back pain; mild degenerative joint disease of the bilateral knees and right hip; and tobacco abuse" but that none of the conditions met or medically equaled the impairments found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 11-12). The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") for light work with the following restrictions:

> [S]he is unable to lift/carry/push/pull more than 20 pounds occasionally and 10 pounds frequently and unable to stand and or walk for more than about 6 hours each in an 8-hour workday; she can sit for 6-8 hours in an 8-hour workday. In addition, she is unable to stoop, crawl, kneel or climb stairs, ramps, ladders, ropes or scaffolds more than occasionally.

(Tr. 14). Consistent with the VE's testimony, the ALJ concluded that Plaintiff could return to her past relevant work as a cashier and was additionally capable of performing the jobs of fast food worker, cafeteria attendant, and greeter (Tr. 16-17).

The ALJ found that Plaintiff "was rather evasive in her testimony and not very credible" (Tr. 15). The ALJ noted that objective medical testing had yielded almost uniformly negative results (Tr. 15). She cited the rheumatologist's most recent finding that Plaintiff's fibromyalgia was stable (Tr. 15). The ALJ noted that despite allegations of fatigue and concentrational problems, Plaintiff continued to care for her minor children, cooked,

performed most household chores and errands, and handled her own finances (Tr. 13-14).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe

impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984)

## ANALYSIS

### The Treating Physician Analysis

Plaintiff argues that the ALJ erred by rejecting Dr. Sahouri's March, 2008 statement that she was unable to work. *Plaintiff's Brief* at 6-10. On a related note, Plaintiff contends that Dr. Sahouri's opinion was improperly excluded from the hypothetical question, thus invalidating the VE's job findings. *Id.* (citing *Varley v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir.1987)).

### A. Basic Principles

"[I]f the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009)(citing *Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 544 (6th Cir.2004)(internal quotation marks omitted)). Further, "[i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors- namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in

determining what weight to give the opinion." *Wilson,* at 544; 20 C.F.R. 1527(d)(2). Regardless of whether substantial evidence is found elsewhere in the record to contradict the source's findings, the ALJ is required nonetheless to give "good reasons" for rejecting the treating physician's opinion. *Wilson* at 544 (citing *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir.1999)).[2]

The mere fact that a treating physician's opinion is contradicted by another source is not a sufficient basis for its rejection. *Hensley* at 266 ("Nothing in the regulations indicates, or even suggests, that the administrative judge may decline to give the treating physician's medical opinion less than controlling weight simply because another physician has reached a contrary conclusion."). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings. *Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391-392 (6th Cir.2004).

### B. Application to Present Case

The ALJ's discussion of Dr. Sahouri's March, 2008 "disability" opinion is stated as follows:

> As for the opinion evidence, the claimant's long time treating internist, Dr. Sahouri, completed a Medical Needs statement for the State of Michigan in March 2008, in which he indicated the claimant's chronic musculoskeletal impairments precluded her ability to perform her past customary work, but did not preclude the performance of other work. While the residual functional capacity assessment in this decision differs from that of the State Agency, it ultimately agrees with the conclusion that the claimant is not disabled. Therefore, it is given some weight insofar as it does not differ from the assessed RFC.

---

[2]In explaining reasons for rejecting the treating physician opinion, the ALJ must consider "the length of the ... relationship and the frequency of examination, the nature and extent of the treatment[,] ... [the] supportability of the opinion, consistency ... with the record as a whole, and the specialization of the treating source." *Wilson,* at 544.

(Tr. 15-16). Plaintiff argues that contrary to the ALJ's summation, Dr. Sahouri found that she was incapable of *all* work. In fact, Dr. Sahouri stated that Plaintiff could "never" perform her past relevant work, but was precluded from "other" work for only six months (Tr. 486). The ALJ's inference that Dr. Sahouri did not find Plaintiff permanently disabled from all work is not an erroneous reading of the treating physician's statement. I also disagree with Plaintiff's contention that the ALJ was also obliged to adopt or discuss earlier "disability" opinions by Dr. Sahouri. Plaintiff fails to mention that in both of the earlier "opinions," the treating physician found her only *temporarily* unable to perform any work, precluding work for "three to four" and six months respectively (Tr. 487-488).

Plaintiff's argument that the ALJ otherwise gave short shrift to the treating physician analysis is also unavailing. The ALJ acknowledged both the length and nature of the treating relationship and that Dr. Sahouri was an internist. She provided "good reasons" for deviating from Dr. Sahouri's statement, drawing support for the RFC from the treating records (Tr. 11-14, 16). Among her significant findings were the dearth of imaging studies supporting Plaintiff's alleged level of impairment. Despite allegations of disability as a result of fibromyalgia, the ALJ noted that Plaintiff did not seek treatment from a rheumatologist after March, 2007 (Tr. 12) and that she engaged in a wide range of daily activities (Tr. 12, 14).

For the same reasons, Plaintiff's argument that ALJ erred by failing to incorporate all of Dr. Sahouri's findings into the hypothetical question is unavailing. First, Plaintiff does not state which of Dr. Sahouri's "limitations" ought to have been included in the hypothetical question. Notably, none of Dr. Sahouri's medical needs statements include a functional capacity assessment from which the ALJ could have drawn hypothetical limitations. Second, because the ALJ's inclusion of certain limitations in the hypothetical question (and exclusion of others) is supported by substantial evidence found in both the treating and

consultive records, she was under no obligation to also include limitations only weakly supported by the record (Tr. 32); *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994)(*citing Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987))("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"). Because the treating physician analysis and choice of hypothetical limitations were well supported and well explained, the ALJ's determination do not provide grounds for remand.

In closing, I note that the record shows that Plaintiff experienced some level of limitation. My recommendation to uphold the administrative determination should not be read to trivialize these limitations. However, the ALJ's findings were well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and accordingly, should not be disturbed by this Court. *Mullen v. Bowen*, *supra.*

## CONCLUSION

For the reasons stated above, I recommend Defendant's motion for summary judgment [Doc. #15] be GRANTED and Plaintiff's motion [Doc. #12] DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v.*

*Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge. Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.

Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

s/ R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Date: January 11, 2012

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on January 11, 2012.

s/Johnetta M. Curry-Williams<br>
Case Manager